Herman Kenneth MOORE, III, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–98–002–CR

Court of Appeals of Texas,
Waco.

Jan. 27, 1999.

Brett L. Bigham, Waxahachie, for appellant.

Joe F. Grubbs, County & Dist. Atty., Jill A. Durbin, Asst. County & Dist. Atty., Waxahachie, for appellee.

Before Chief Justice DAVIS, Justice CUMMINGS, Justice VANCE.

## OPINION

REX D. DAVIS, Chief Justice.

A jury convicted Appellant Herman Kenneth Moore, III, of robbery and assessed punishment at fifteen years' confinement in the Texas Department of Criminal Justice–Institutional Division. *See* TEX. PEN.CODE ANN. § 29.02(a)(2) (Vernon 1998).

Moore presents three issues in which he claims that the trial court erred when it: (1) failed to charge the jury that Kelly Black was an accomplice as a matter of law; (2) failed to grant his motion for directed verdict because the evidence was insufficient to cor-roborate the testimony of the two accomplice witnesses; and (3) allowed testimony of the victim's out-of-court identification of him.

We affirm the judgment.

## FACTUAL BACKGROUND

On January 1, 1997, at 5:30 a.m., Gabriel Monjaraz was preparing to go to work. He heard a knock at his front door and answered it, expecting his supervisor to pick him up for work. Instead, two black males were at his door. The taller of the two men asked Monjaraz if he wanted to purchase a television. Monjaraz told him no several times before he pulled out a gun, placed it against Monjaraz's head, and led him to the trunk of a car parked on the street in front of Monjaraz's house. The taller man was later identified as the Appellant, Herman Kenneth Moore, III. Moore, while holding the gun to Monjaraz's head, ordered Monjaraz to lie across the car and to place his chest against the trunk. While Monjaraz lay prone over the trunk, the shorter of the two men took Monjaraz's wallet. The shorter man was later identified as Jeff Fields. While prone over the trunk, Monjaraz saw the driver of the car. The driver was later identified as Kelly Black. After Moore and Fields took Monjaraz's wallet, they climbed into the car. Once inside the car, Fields gave Monjaraz's wallet to Moore. Monjaraz testified that he had approximately $170 to $180 in his wallet at the time it was stolen.

Later that evening, Officer Bobby Owen pulled Kelly Black over for a traffic violation. Black drove a red Camaro with Indiana license plates. Officer Owen arrested Black and took her into custody for improper vehicle registration and for not having liability insurance.

Black, Moore, Fields, and others had spent New Year's Eve together at a party. Black testified that she had been drinking heavily at the party. On January 1, 1997, between 3:00 a.m. and 5:00 a.m., Black left the party with Moore and Fields. Fields asked Black to drive them to a friend's house across town. Fields' "friend's" house was actually Monjaraz's house. Black drove Moore and Fields to Monjaraz's house, parked her car on the street, and waited in the car until Moore and

Fields returned. Black testified that while in the car, she listened to the radio and was unaware that Moore and Fields were in the midst of a robbery. She also testified that at the time she drove Moore and Fields to his "friend's" house, she was very tired and intoxicated. Black also testified that she did not know that Moore and Fields planned to rob anyone and that she did not receive any of the proceeds of the robbery. After Moore and Fields returned to the car, Black drove to them to another friend's house and then went to a gas station where Moore paid for her car's gas. Black then drove back to the party, dropped off Moore and Fields, and went home. Black was initially charged as a party to the offense because she was the driver. However, her indictment was subsequently dismissed in exchange for her plea of true to the revocation of her community supervision and her promise to testify truthfully in the proceedings against her former co-defendants.

At the police station, Detective David Smith gave Monjaraz several mug shot books to look through and assembled two photo line-ups. Detective Smith then showed Monjaraz the first photo line-up. In this line-up Monjaraz identified Kelly Black as the driver of the car. Monjaraz put his initials next to Black's picture and then signed the bottom of the photo line-up. Detective Smith then assembled a second photo line-up. Detective Smith included Moore's picture in the second photo line-up based upon Monjaraz's description of the driver and the robbers and upon his prior knowledge of Black and her acquaintances. Detective Smith told Monjaraz to look at the photos and to "pick two." Monjaraz then identified Moore as the man who held a gun to his head and another man, Michael English,[1] as the shorter man who took his wallet. Monjaraz initialed next to the men he identified as the robbers and signed the bottom of the photo line-up.

At trial, Monjaraz testified that he made a positive identification of Moore at the police station. Monjaraz testified that he identified Moore almost immediately after the robbery.

However, during cross-examination Monjaraz testified that he was very scared and angry when the two men forced him out of his home, held a gun to his head, and stole his wallet. Monjaraz also testified that when viewing Moore in the courtroom, several months after the robbery, he was not absolutely sure that Moore was the man who robbed him.

Fields testified that he and Moore went to Monjaraz's house and offered to sell Monjaraz a television. Fields testified that neither he nor Moore actually had a television to sell at the time they offered to sell one to Monjaraz. Fields also testified that when Monjaraz refused to purchase a television, Moore aimed a gun at Monjaraz's head, lead Monjaraz to the parked car, and then took his wallet. Fields also testified that Black did not participate in the robbery and that he and Moore did not tell Black what they planned to do once they arrived at his "friend's" house. Fields, also indicted for the same offense as Moore, testified voluntarily. Fields did not testify in exchange for a more lenient sentence or as part of a deal with the State.

The court instructed the jury that it was a question of fact whether Black was an accomplice. Moore objected to this instruction and to the court's refusal to instruct the jury that Black was an accomplice as a matter of law. The court instructed the jury that Fields was an accomplice as a matter of law.

## ACCOMPLICE WITNESS TESTIMONY

■ The first issue Moore presents is that the trial court erred when it failed to instruct the jury that Kelly Black was an accomplice witness as a matter of law. Moore contends that since Black was indicted for the same offense, Black was an accomplice as a matter of law and the trial court should have so instructed the jury. Moore contends that Black's indictment was dismissed in exchange for Black's testimony against him and her plea of true to the revocation of her community supervision. Moore also contends that once a witness is indicted for the

1. Michael English was arrested and subsequently released after an investigation revealed that Jeff

Fields was actually Moore's accomplice.

same offense as the defendant, that witness will continue to remain an accomplice as a matter of law, regardless of whether the indictment is later dismissed.

However, the State contends that Black was not an accomplice as a matter of law. The State claims that although Black was indicted for the same offense as Moore, her indictment was later dismissed. Therefore Black was a *former* co-indictee, not a current co-indictee and thus, not an accomplice as a matter of law. The State claims that Black's accomplice status was a proper question to put before the jury. The State also admits that Black's indictment was dismissed in exchange for her plea of true to the revocation of her community supervision and her promise to testify truthfully in the proceedings against her former co-defendants.

When the evidence clearly shows that the witness is an accomplice as a matter of law, the trial court must so instruct the jury. *Solis v. State*, 792 S.W.2d 95, 97 (Tex. Crim.App.1990) (en banc); *Marlo v. State*, 720 S.W.2d 496, 497 (Tex.Crim.App.1986) (en banc). However, if the witness's accomplice status is a question of fact, the trial court should instruct the jury to resolve whether or not the witness is an accomplice, and if they find that the witness is an accomplice, then they must find corroborating evidence that connects the defendant to the crime. *Haney v. State*, 951 S.W.2d 551, 552–53 (Tex. App.—Waco 1997, no pet.).

Our first inquiry is to determine whether Black was an accomplice as a matter of law. In *Garza v. State*, the Court of Criminal Appeals held that a witness whose indictment was dismissed the morning of the defendant's trial was not an accomplice as a matter of law. 164 Tex.Crim. 9, 296 S.W.2d 267, 269 (1956). In *Garza*, the witness helped the defendant cut and take a large quantity of copper wire from a tugboat. *Id.* Both the witness and defendant in *Garza* were indicted for the same offense, felony theft. The witness later testified at trial that the defendant told him they had permission to take the wire. The witness also testified that he did not receive any compensation for his acts. The court held that the witness was not an accomplice as a matter of law because his

indictment was dismissed. However, the court held that his accomplice status was still a question of fact that was properly submitted to the jury. *Id.* at 269. The court did not discuss whether the witness' indictment was dismissed in exchange for testimony against the defendant and the effect this might have on the witness' accomplice status.

Recently, in *Blake v. State*, the Court of Criminal Appeals examined the juvenile witness exception to the accomplice witness rule. 971 S.W.2d 451 (Tex.Crim.App.1998) (en banc). The Court stated that the test to determine whether a witness is an accomplice as a matter of law is whether there is evidence in the record to support a charge against the witness. *Id.* at 455. The Court stated, "Whether the person is actually charged and prosecuted for their participation is irrelevant to the determination of accomplice status—what matters is the evidence in the record." *Id.*

In *Blake*, the witness was a juvenile who helped Blake steal several automobiles from a dealer's lot. The juvenile witness was never indicted for his participation in the offense, yet the juvenile witness was listed on Blake's indictment as a member of the criminal organization Blake allegedly formed to steal the automobiles. Blake argued that the court erred when it did not submit the question of whether the juvenile witness was an accomplice to the jury. The Court abolished the juvenile witness exception to the accomplice witness rule, which did not require the corroboration of the testimony of a juvenile witness accomplice. *Id.* at 461. The Court did not deal with a witness who was a co-indictee and whose indictment was later dismissed. However, the Court did hold that the determination of whether a person is an accomplice as a matter of law does not depend on whether the witness was "actually charged and prosecuted." *Id.* at 455. Instead, one should look at the record and determine if there is evidence in the record that supports a charge against the witness. *Id.* If there is such evidence, then the witness is an accomplice as a matter of law. *Id.*

Examining Moore's issue on appeal under *Blake*, we hold that the record is bare with respect to whether Black could be charged

with the same offense as Moore. Moore was charged with aggravated robbery, yet convicted of robbery. *See* TEX. PEN.CODE ANN. §§ 29.02(a)(2), 29.03(a)(2) (Vernon 1998). Our question is whether Black could be convicted of aggravated robbery or any lesser-included offense. If so, then Black is an accomplice as a matter of law. *Ex parte Zepeda*, 819 S.W.2d 874, 876 (Tex.Crim.App. 1991) (en banc) (a witness who is indicted for a lesser included offense based upon his participation in the commission of the defendant's greater offense is an accomplice as a matter of law).

The crime of robbery requires a person, with the intent to obtain or maintain control of the property, to intentionally or knowingly threaten or place another in fear of imminent bodily injury or death. TEX. PEN.CODE ANN § 29.02(a)(2) (Vernon 1998). Black drove Moore and Fields to Monjaraz's house. Black did not furnish any weapons, nor did she scheme or plan the robbery. Black testified that she did not know that Moore and Fields planned to rob anyone when she drove them to Fields' "friend's" house.[2] Therefore, the record does not contain any evidence that Black had the requisite intent to commit robbery.

For these reasons, we overrule Moore's first issue.

## MOTION FOR DIRECTED VERDICT

■ The second issue Moore presents is that the trial court erred when it denied his motion for directed verdict because the evidence presented by the State was insufficient to corroborate the testimony of Black and Fields. However, the State claims that even when the testimony of Black and Fields is eliminated from consideration, there is sufficient evidence that corroborates their testimony and that tends to connect Moore with the robbery. We agree with the State.

■ The standard of review of a motion for directed verdict is the same used for a review of the legal sufficiency of the evidence. *Havard v. State*, 800 S.W.2d 195, 199

(Tex.Crim.App.1989) (en banc); *Holmes v. State*, 962 S.W.2d 663, 670 (Tex.App.—Waco 1998, pet. ref'd, untimely filed). We must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App.1997) (en banc), *cert denied*, —— U.S. ——, 118 S.Ct. 125, 139 L.Ed.2d 75; *Smith v. State*, 959 S.W.2d 1, 18 (Tex.App.—Waco 1997, pet. ref'd). The testimony of an accomplice cannot convict a defendant unless the accomplice's testimony is corroborated by other evidence that tends to connect the defendant with the offense committed. TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1998). The test for sufficient corroboration of the evidence is to eliminate from consideration the accomplice testimony and then examine the remaining inculpatory evidence to determine whether it tends to connect the defendant with the offense. *McDuff*, 939 S.W.2d at 612. One accomplice's testimony may not corroborate another accomplice's testimony. *Id.; Badillo v. State*, 963 S.W.2d 854, 857 (Tex.App.—San Antonio 1998, pet. ref'd). The remaining non-accomplice testimony does not need to be sufficient in itself to establish the defendant's guilt beyond a reasonable doubt. *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim.App. 1994) (en banc); *Cox v. State*, 830 S.W.2d 609, 611 (Tex.Crim.App.1992) (en banc). The corroborative evidence does not need to directly link the defendant to the offense; it only must tend to connect the defendant to the offense. *McDuff*, 939 S.W.2d at 613; *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim.App.1993) (en banc); *Cox*, 830 S.W.2d at 611.

The State contends that the following evidence tends to connect Moore to the robbery and corroborates Black's and Fields' testimony:

---

**2.** Black's testimony that she did not know of the robbery whether before or after the fact was uncontroverted.

- Monjaraz's identification of Moore and Black in the photo line-up at the police station

- Monjaraz's testimony that the trunk of the vehicle that Moore forced him to lay upon was a red Camaro with Georgia or out-of-state license plates

- Monjaraz's testimony that he recognized Black as the driver of the red car

- Officer Owen's testimony that when he pulled over Black for various traffic violations on the day of the robbery, she drove a red Camaro with Indiana license plates

After our review of the above-mentioned non-accomplice testimony, we find that this evidence does tend to connect Moore to the offense. Therefore, Black's and Fields' testimony was sufficiently corroborated.

For these reasons, we overrule Moore's second issue.

## VICTIM'S OUT–OF–COURT IDENTIFICATION

The third issue Moore presents is that the trial court erred when it allowed Monjaraz's testimony relating to his out-of-court identification of Moore. Moore claims that when the police showed Monjaraz the photo line-up that contained Moore's picture in spot number two, the police told Monjaraz to "pick two." Moore claims that the police told Monjaraz to pick picture number two rather than pick two pictures. Moore also claims that Monjaraz did not sign or initial the actual photograph of Moore and that this contributes to the unreliability of Monjaraz's out-of-court identification. Moore also claims that Monjaraz viewed a mug shot book for nearly an hour before the police assembled a photo line-up that contained Moore's photo. The State counters that there was no evidence that the police used impermissibly suggestive procedures when arranging the photo line-up that contained Moore's photo. The State also claims that when Officer Smith told Monjaraz to "pick two," that Monjaraz knew that Officer Smith meant to pick two photos, not to pick the photo located on spot number two.

When determining if an out-of-court identification is so suggestive that its use at trial would deny a defendant due process, the court must look at: (1) whether the out-of-court identification procedure was impermissibly suggestive and (2) whether this suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Barley v. State*, 906 S.W.2d 27, 33 (Tex.Crim.App.1995) (en banc); *Espinoza v. State*, 955 S.W.2d 108, 115 (Tex.App.—Waco 1997, pet. ref'd). An out-of-court identification procedure may be impermissibly suggestive when the photo array only includes one individual who closely resembles the pre-procedure description. *Barley*, 906 S.W.2d at 33. It may also be impermissibly suggestive when the police suggest that the suspect is included in the line-up or photo array. *Id.*

The record does not reveal any impermissibly suggestive procedures used by the police when arranging and presenting the photo line-ups to Monjaraz. Monjaraz testified that when Officer Smith told him to "pick two," that he knew to pick two photos, not to pick photo number two.

Moore also claims that the photo line-up was impermissibly suggestive because Monjaraz viewed a mug shot book for nearly an hour before he was shown the photo line-up that contained Moore's photo. This is not an impermissibly suggestive procedure. Moore also claims that because Monjaraz did not sign or initial the actual photo located within the line-up, that this contributes to the unreliability of Monjaraz's identification of Moore. At trial Monjaraz testified that although he did not sign or initial the actual photo he picked in the line-up, he did initial *next to* the photo on the line-up card and signed the bottom of the line-up card. We hold that the police's out-of-court identification procedures were not impermissibly suggestive. Therefore, because we do not find that the out-of-court identification procedures were impermissibly suggestive, we do not need to determine whether the procedures created a substantial likelihood of irreparable misidentification. *Ford v. State*, 919 S.W.2d 107, 117 (Tex.Crim.App.1996) (en banc); *Barley*, 906 S.W.2d at 34; *Webb v.*

**790**

*State,* 760 S.W.2d 263, 269 (Tex.Crim.App. 1988) (en banc).

For these reasons, we overrule Moore's third issue.

We affirm the judgment.

Justice CUMMINGS, not participating.