**In the Matter of M.E.R., A Juvenile.**

**No. 10–98–175–CV.**

Court of Appeals of Texas,
Waco.

June 23, 1999.

Paul Guillotte, Jr., Gatesville, for appellant.

Richard L. Mackay, Jr., Asst. Dist. Atty., Gatesville, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

M.E.R. was charged with delinquent conduct by committing the offense of burglary of a habitation. He pled "not true." A jury found that the conduct had occurred and the court placed him on one year's probation, community service hours, and $12,215 in restitution. He appeals, asserting three issues for review. We will affirm the judgment.

## FACTS

Sandy Ferrell's husband met an untimely death in their trailer home. Not wishing to remain at the home where he died, Ferrell and her children moved out immediately without taking the time to move their belongings. Ferrell intended to get the belongings at a later date. Paul and Novia Fisher, Ferrell's neighbors, agreed to keep an eye on the place. On May 29, 1997, the Fishers noticed that the Ferrell home looked as though it had been burglarized, and they called the police. Deputy David Dyer responded to the call. When he arrived, Dyer noticed that several items were on the ground outside a broken win-

dow. These items included a ball, a bat, and a "lava" lamp. Dyer testified that these items led him to believe that children had broken into the home, although he found no other evidence tending to show who committed the crime.

The next day, Paul Fisher called Dyer and told him that Dustin Ferrell, one of the Ferrell children, had mentioned an abandoned house where kids would often play. Paul and Dustin had gone to the house and discovered some of the items that had been taken from the Ferrell's. Dyer went to the house and discovered an asthma inhaler with M.E.R.'s name on it. At that time, M.E.R. became a suspect in the burglary.

A few days later, Dyer was patrolling the neighborhood and saw M.E.R. and J.P.S. walking down the road. He stopped them and asked their names. M.E.R. did not give his true name and denied knowing M.E.R. Dyer also asked the boys if they knew of the abandoned building where M.E.R.'s inhaler was found, to which they responded that they did not.

J.P.S. indicated that he needed to go home because of the lateness of the day, and Dyer offered to drive him. Once the three arrived at the home, Dyer spoke with J.P.S.' stepfather, Charles Walker. Walker told Dyer that he had found a cooler containing various items in the wooded area of his yard a couple of days earlier. Walker told Dyer that he had asked J.P.S. and M.E.R. about the cooler and that M.E.R. indicated it belonged to him. Dyer then asked the boys if the cooler was still around, and J.P.S. said that it was still in the woods. J.P.S. and M.E.R. then got the cooler and brought it to Dyer. Dyer asked the boys if anything else had been found in the woods, to which they replied that they had found some other things. M.E.R. told Dyer that he had a Nintendo game at his house that

they had found, so he and Dyer went to his home to retrieve it. Once at the home, M.E.R. gave Dyer the game plus some baseball cards and a bike.[1]

On June 9, Paul Fisher again contacted Dyer with information about the burglary. He told Dyer that his wife, Novia, overheard M.E.R. "bragging" that he and J.P.S. had burglarized the Ferrell home. It wasn't until December of 1997 that Dyer finally brought J.P.S. into custody and took a statement from him. In that statement, J.P.S. admitted that he and M.E.R. committed the burglary. J.P.S. and M.E.R. were both charged as juveniles with burglary of the Ferrell home.

## ISSUES

In his first issue, M.E.R. challenges the sufficiency of the evidence to corroborate J.P.S.' testimony. His second issue complains that the court erred in failing to instruct the jury on accomplice-witness testimony. His third issue asserts that trial counsel was ineffective for failing to request a jury instruction on accomplice-witness testimony.

## ACCOMPLICE–WITNESS TESTIMONY

 In determining whether a witness is an accomplice, we look at the witness' participation before, during or after the commission of the offense. *McFarland v. State*, 928 S.W.2d 482, 514 (Tex. Crim.App.1996) (citing *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex.Crim.App.1986)); *Moron v. State*, 779 S.W.2d 399 (Tex.Crim. App.1985). There must be an affirmative act committed by the witness to promote the commission of the offense. *McFarland*, 928 S.W.2d at 514 (citing *Kunkle*, 771 S.W.2d at 441). J.P.S. was charged with the same offense as M.E.R. and he admitted to the conduct. Thus, he was an accomplice-witness as a matter of law.[2] *See*

---

1. Dyer still did not know that the boy with J.P.S. was M.E.R. It wasn't until Dyer called the school to ask about a student by the name of M.E.R. that he found out M.E.R.'s identity.

2. In *Blake v. State,* a juvenile witness had helped Blake steal several automobiles from a dealer's lot. 971 S.W.2d 451 (Tex.Crim.App. 1998). The juvenile witness was never indict-

*Holladay v. State,* 709 S.W.2d 194, 196 (Tex.Crim.App.1986) (witness was accomplice because he had been charged with committing same offense as appellant).

Section 54.03(e) of the Family Code requires corroboration of accomplice testimony in juvenile delinquency proceedings:

> An adjudication of delinquent conduct or conduct indicating a need for supervision cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the child with the alleged delinquent conduct or conduct indicating a need for supervision; and the corroboration is not sufficient if it merely shows the commission of the alleged conduct.

TEX.FAM.CODE ANN. § 54.03(e) (Vernon 1996). The accomplice-witness language in section 54.03(e) is identical in substance to article 38.14 of the Code of Criminal Procedure. *In the matter of C.M.G.,* 905 S.W.2d 56, 58 (Tex.App.—Austin 1995, no writ). Therefore, we look to the decisions of the Court of Criminal Appeals under article 38.14 as guidelines for the interpretation of section 54.03(e). *Id.*

■ Article 38.14 states that a conviction "cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX.CODE CRIM.PROC. ANN. art 38.14 (Vernon 1979). The rationale behind the accomplice-witness rule is that the accomplice is a discredited witness, and his testimony is to be carefully scrutinized because the accomplice may have an interest in the outcome of the trial and may be a corrupt source. *Beathard v. State,* 767 S.W.2d 423, 429 (Tex.Crim. App.1989); *Brosky v. State,* 915 S.W.2d

120, 137 (Tex.App.—Fort Worth 1996, pet. ref'd).

■ The test for determining whether evidence is sufficient to corroborate accomplice testimony is to first eliminate from consideration the accomplice-witness' testimony and then examine the other inculpatory evidence to ascertain whether the remaining evidence independently "tends to connect" the defendant with the offense. *McDuff v. State,* 939 S.W.2d 607, 612 (Tex. Crim.App.1997); *Burks v. State,* 876 S.W.2d 877, 887 (Tex.Crim.App.1994); *Ashford v. State,* 833 S.W.2d 660, 665 (Tex. App.–[1st Dist.] 1992, no pet.). Accordingly, we will review the facts to determine whether J.P.S.' testimony is adequately corroborated.

J.P.S. admitted that he and M.E.R. burglarized the Ferrell home. He identified the cooler and other items recovered as things that they had taken. M.E.R. lied about his identity. He told Walker that some of the items from the Ferrell burglary belonged to him, yet told Dyer that he and J.P.S. found the items. M.E.R.'s asthma inhaler was found in an abandoned building along with some of the items taken from the house. Many of the stolen items were located at M.E.R.'s house. Novia Fisher overheard M.E.R. bragging that he and J.P.S. broke into the trailer. This evidence "tends" to connect M.E.R. with the offense. Thus, the accomplice-witness testimony is adequately corroborated. *McDuff,* 939 S.W.2d at 612. Issue one is overruled.

## THE CHARGE

■ The court did not instruct the jury that the accomplice-witness testimony must be corroborated. M.E.R. did not request the instruction. Article 38.14 is not worded, however, in such a way as to require a request for the instruction—its plain meaning disallows any conviction

ed for his participation in the offense, yet he was listed on Blake's indictment as a member of the criminal organization formed to steal the automobiles. Blake argued that the court erred when it did not submit the question of

whether the juvenile witness was an accomplice to the jury. The Court abolished the juvenile exception to the accomplice-witness rule in criminal cases. *Id.* at 461.

based upon the uncorroborated testimony of an accomplice. *Howard v. State,* 972 S.W.2d 121, 126 (Tex.App.—Austin 1998, no pet.). Unlike defensive issues such as those described in *Posey v. State,* 966 S.W.2d 57 (Tex.Crim.App.1998), jury instructions regarding accomplice-witness testimony are laws "applicable to the case." *Howard,* 972 S.W.2d at 126. Thus, the fact that the court failed to include an instruction on accomplice-witness testimony in the jury charge was error, regardless of whether an objection was made. *Saunders v. State,* 817 S.W.2d 688, 693 (Tex. Crim.App.1991) (court's failure to instruct jury of need to corroborate accomplice testimony in arson prosecution was critical to trial's outcome and effectively denied defendant fair trial); *Solis v. State,* 792 S.W.2d 95, 97 (Tex.Crim.App.1990); *Howard,* 972 S.W.2d at 126 (citing *Posey,* 966 S.W.2d at 60); *see also Moore v. State,* 984 S.W.2d 783, 787 (Tex.App.—Waco 1999, no pet.) (When the evidence clearly shows that the witness is an accomplice as a matter of law, the trial court must so instruct the jury.). The fact that defense counsel failed to object to the omission of an instruction is only relevant in determining which standard of harm to apply. *See Saunders,* 817 S.W.2d at 693; *Almanza v. State,* 686 S.W.2d 157, 172 (Tex.Crim.App. 1985) (op. on reh'g). *Almanza* sets forth the appropriate standard of review and is applicable to juvenile cases. *See In re E.F.,* 986 S.W.2d 806, 810 (Tex.App.—Austin 1999, no pet. h.); *Matter of K.W.G.,* 953 S.W.2d 483, 488 (Tex.App.—Texarkana 1997, no pet.).

## HARM

■ Having found error, we must determine whether the error in this circumstance caused "egregious harm." *Almanza,* 686 S.W.2d at 172. In *Saunders v. State,* the Court of Criminal Appeals assessed the degree of harm resulting from a trial court's failure to instruct the jury that accomplice-witness testimony must be corroborated before it may be used as a basis for conviction. 817 S.W.2d at 692. In determining whether there was egregious harm, the Court focused on whether the corroborating evidence was so "weak and unconvincing" that the State's case for conviction would have been clearly and significantly less persuasive had the jury been properly instructed. *Id.* As outlined above, there was substantial evidence to corroborate J.P.S.' testimony. We cannot say that this evidence is so weak and unconvincing that the State's case would have been less persuasive had the jury been properly instructed. Thus, there was no egregious harm resulting from the court's failure to properly instruct the jury. *See id.* Issue two is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

M.E.R.'s final point asserts that his counsel was ineffective when he failed to request a charge concerning the accomplice-witness testimony. This complaint has not been presented to the trial judge.

■ We have observed that some claims of ineffective assistance of counsel can be determined from the trial record. *Gonzalez v. State,* 994 S.W.2d 369, 374, n. 3 (Tex.App.—Waco, no pet. h.). For example, a defense attorney's failure to object to the omission of a jury instruction on the necessity of corroboration of accomplice-witness testimony may amount to ineffective assistance of counsel. *See Ex parte Zepeda,* 819 S.W.2d 874 (Tex.Crim.App. 1991); *Howard,* 972 S.W.2d at 128 (citing *Posey,* 966 S.W.2d at 62 (Womack, J., concurring) (defense attorney's failure to object to jury-charge omission would almost always amount to ineffective assistance of counsel), *and Posey,* 966 S.W.2d at 59–60 (Mansfield, J., concurring) (while failure to include instruction on defensive issue of mistake of fact is not trial court's error, failure of defense counsel to request such instruction is ineffective assistance of counsel)). Although M.E.R.'s claim of ineffective assistance might be determined from the record, we have held that claims

not presented to the trial court are not preserved for our review. *Gonzalez*, 994 S.W.2d at 374, n. 3. We now apply this preservation rule to juvenile cases. TEX. R.APP.P. 33.1(a). Issue three is overruled.

The judgment is affirmed.