Michael Garcia v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-230-CR

     MICHAEL GARCIA,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 2000-1081-C
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      After a trial by jury, Michael Garcia was convicted of capital murder and sentenced to life
imprisonment. He appeals on several issues: (1) the evidence was factually insufficient to support
his conviction; (2) the trial court should have granted a mistrial after the prosecutor commented
during closing argument on his failure to testify; (3) the jury charge should have instructed the jury
that Martha Perez was an accomplice witness; and (4) his trial counsel was ineffective for failing
to request the “accomplice witness rule” jury instruction as to Martha Perez. We will overrule
all of his issues and affirm the judgment.
FACTS
      On the night of September 22, 2000, Moises Vasquez and Ricardo Ramirez met Hector Cruz
Diaz at a convenience store in Waco. All three are Mexican nationals. At the convenience store,
they met Michael Garcia, Terri Perez, and Paul Juandiego, who along with Faustino Juandiego
and Timothy Rivera, had been together that night driving around in a red Dodge Neon. Rivera
had brought a .22 caliber gun with him, which he had handed to Paul Juandiego at some point
during the night. 
      Garcia and Paul Juandiego told Vasquez, Ramirez, and Diaz that they could provide them with
prostitutes at the park. Vasquez, Ramirez, and Diaz left the convenience store in Diaz’s truck. 
Garcia, Rivera, Perez, Paul Juandiego, and Faustino Juandiego followed them in the Neon. Once
inside the car, Garcia told the others of his plan to rob the three Mexican men.
      Ramirez asked Diaz to stop at the intersection of West and 13th streets, which was near “A
Child’s World” park and the Camp Fire building. Diaz parked near a streetlight, and Ramirez and
Diaz got out of the truck. Vasquez remained in the truck. The Neon also stopped nearby. At this
point, Garcia, Rivera, Perez, Paul Juandiego, and Faustino Juandiego were joined by Elisha
Carbajal and Martha Perez. 
      Although the evidence conflicts as to whether Ramirez and Diaz were lured or forced into the
park, they were taken to a dark area behind the Camp Fire building. There they were robbed and
forced to disrobe after one of their attackers fired Rivera’s gun. Witnesses testified that shortly
after the robbery, Garcia and Paul Juandiego cornered Vasquez who had remained in the truck
during this incident. They slammed his legs in the doors when he tried to escape from the vehicle. 
According to witnesses, when he did finally flee the vehicle, Garcia shot him in the back twice. 
The shots were fatal.
FACTUAL SUFFICIENCY REVIEW
      In his first issue, Garcia asserts that the evidence was factually insufficient to support his
conviction. In reviewing a factual sufficiency claim, we begin with the assumption that the
evidence is legally sufficient. Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). 
We consider all of the evidence neutrally, not viewing it in the light most favorable to the verdict. 
Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997); Fulgium v. State, 4 S.W.3d 107,
112 (Tex. App.—Waco 1999, pet. ref’d). We must also remain cognizant of the factfinder’s role
and unique position, a position that the reviewing court is unable to occupy. Johnson v. State, 23
S.W.3d 1, 9 (Tex. Crim. App. 2000). The jury determines the credibility of the witnesses and
may “believe all, some, or none of the testimony.” Chambers v. State, 805 S.W.2d 459, 461
(Tex. Crim. App. 1991). It is the jury that accepts or rejects reasonably equal competing theories
of a case. Goodman v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001).
      Our ultimate decision is guided by the Court of Criminal Appeals’ determination that the
evidence to support a criminal conviction may be factually insufficient in two distinct ways. Id.
at 285-86. In the first, "the evidence in support of the existence of a vital fact, considered as
standing alone, is factually too weak to support it." Id. at 285. In the second, the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof so as to be “clearly
wrong” or “manifestly unjust.” Id. at 285-86; Johnson, 23 S.W.3d at 11. A decision is not
manifestly unjust as to the accused merely because the factfinder resolved conflicting views of
evidence in favor of the State. Cain, 958 S.W.2d at 410.
      A factual sufficiency analysis can consider only those few matters bearing on credibility that
can be fully determined from a cold appellate record. Johnson, 23 S.W.3d at 8. Occasionally this
approach permits some credibility assessment but usually requires deference to the jury’s
conclusion based on matters beyond the scope of the appellate court’s legitimate concern. Id. 
Thus, unless the available record clearly reveals a different result is appropriate, an appellate court
must defer to the jury’s determination concerning what weight to give contradictory testimonial
evidence because resolution often turns on an evaluation of credibility and demeanor, and the
jurors were in attendance when the testimony was given. Id.
      Garcia points to inconsistencies in the testimony of several witnesses to suggest that the
evidence was factually insufficient. Ramirez testified that he did not see what happened to
Vasquez, because he was still behind the Camp Fire building where he had been robbed and forced
to strip. He also testified that he was unable to see the people behind the Camp Fire building
because it was too dark. However, approximately three days after the robbery, Ramirez identified
Garcia from a photo lineup as one of the men involved.
      Diaz testified that he never saw the face of the man who attacked him behind the Camp Fire
building and that he did not see who shot Vasquez near the truck. However, Diaz testified that
the area near the truck was well lit, he picked Garcia out of photo lineup about three days after
the robbery, and he identified Garcia in court as having been present at the convenience store and
at the park that night.
      Elisha Carbajal testified that Paul Juandiego fired the first shot behind the Camp Fire building,
but that she later saw him throw the gun to Garcia over the hood of the truck.


 She said that she
saw Garcia shoot Vasquez in the back. She also said that Garcia later told her “I am a killer” and
threatened to kill her if she told anyone what happened that night.
      Timothy Rivera testified that both Garcia and Paul Juandiego spoke to the men in Spanish at
the convenience store.


 He testified that he saw Garcia shoot Vasquez. Rivera said that he
remained with Garcia after the shooting and that Garcia never said “I am a killer”; he only said
“I shot that dude.”
      Albert McClenan, who lived near the scene of the crimes, testified that he was outside on his
porch and witnessed Vasquez’s shooting. McClenan, who has been partially deaf since birth, said
that despite his hearing loss, he can hear sounds that are loud enough or close enough. He also
testified that although his porch is near the street where the shooting occurred, he would not have
been able to hear the shot that was fired from behind the Camp Fire building. He testified that he
heard and felt a gunshot, he stood up near his fence, and he looked toward the street. He saw
Vasquez fall and Garcia shoot him again. McClenan returned to his house because he was afraid. 
Several days after the shooting, he identified Rivera and two others as people he saw that night. 
The two others were later cleared of all charges. McClenan admitted that he drank about two or
three forty-ounce bottles of beer in a two- or three-hour period that night, but he testified that he
could still see clearly. He identified Garcia in court and said that he was one hundred percent sure
that Garcia was the shooter.
      Martha Perez, who was twelve years old at the time, had walked to the park from her aunt’s
house where she lived. She said that Garcia asked her to pose as a prostitute to help him rob the
Mexican men. She did not respond; she just remained silent. She initially followed the others into
the park, but then she returned to the car to speak to Rivera. When she heard the gunshot coming
from the park, she quickly left on foot. Minutes later, when she heard the second shot, she turned
and looked toward the lighted intersection. She saw Garcia standing over Vasquez, pointing a gun
at him. Vasquez was lying on the ground. Martha said that she recognized Garcia by the shape
of his body, his coloring, his mustache, and the baseball cap he wore that night.
      Gregory Solis, who also lived near the park, testified that he heard the shots that night. He
said he saw a man wearing a baseball cap walk away from the scene and get into the passenger
side of a car. He then saw a second man come around the Camp Fire building. After the car left,
he saw Vasquez in the intersection, walked over, and found Vasquez still alive. He testified that
after calling the police from his house, he returned to the intersection to find Vasquez had died.
      Garcia asserts that the conflicts in the evidence might also support the hypothesis that Paul
Juandiego shot Vasquez. Because the jury weighs conflicting evidence and resolution of that issue
turns on credibility, we must defer to the jury’s determination. See id.
      Here, the evidence supports the jury’s finding and is not outweighed by contrary evidence. 
We overrule Garcia’s first issue.
FAILURE TO TESTIFY
      Garcia’s second issue contends that the prosecutor improperly commented during closing
argument on his failure to testify. A proper jury argument must fall within one of four general
areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to
argument of opposing counsel; and (4) plea for law enforcement. Guidry v. State, 9 S.W.3d 133,
154 (Tex. Crim. App. 1999). But when a prosecutor’s statement falls outside of these parameters,
the statements themselves cannot be error. Rather, it is the trial court’s responses to defense
counsel’s objections to the statements that may be error. Chimney v. State, 6 S.W.3d 681, 703
(Tex. App.—Waco 1999, no pet.). Usually three types of error are possible: (1) overruling the
initial objection to the prosecutor’s statement; (2) granting the initial objection, but denying a
request for an instruction to the jury to disregard the statement; and (3) granting the initial
objection and instructing the jury to disregard, but denying a motion for a mistrial. Id.
      Garcia complains of the third type of error. He says that the trial court erred in denying his
motion for mistrial after the prosecutor commented on his failure to testify. The prosecutor said,
“Mr. Martinez [Garcia’s attorney] wants to claim about Mr. Rivera not talking to the police the
first time. But he sure wants to claim his client’s Constitutional privilege. You think Mr. Rivera
had those same–”. Garcia’s attorney then objected and the objection was sustained. The court
immediately instructed the jury to “disregard last statement of counsel for any purpose
whatsoever,” and denied Garcia’s motion for mistrial.
      “A comment on an accused’s failure to testify violates the accused’s state and federal
constitutional privileges against self incrimination.” Chimney, 6 S.W.3d at 702. It also violates
article 38.08 of the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.08
(Vernon 1979).


 The test for whether a comment is improper is whether "the offending language,
when viewed from the jury's standpoint, [was] manifestly intended or [was] of such a character
that the jury would necessarily and naturally take it as a comment on the accused's failure to
testify." Chimney, 6 S.W.3d at 702, Caldwell v. State, 818 S.W.2d 790, 800 (Tex. Crim. App.
1991) (quoting Dickinson v. State, 685 S.W.2d 320, 323 (Tex. Crim. App. 1984)).
      Chimney, 6 S.W.3d at 702.
      However, this does not end our analysis, because a prosecutor’s statement alone does not
constitute error. Id. at 703, Washington v. State, 822 S.W.2d 110, 118 (Tex. App.—Waco 1991),
rev’d on other grounds, 856 S.W.2d 184 (Tex. Crim. App. 1993). And the court recognized that
the statement was improper when it sustained the objection and instructed the jury to disregard it. 
Therefore, we must decide whether the court’s denial of Garcia’s motion for mistrial was error. 
Chimney, 6 S.W.3d at 703. A trial court’s denial of a motion for mistrial is not error if the court’s
instruction to disregard the improper jury argument cures its prejudicial effect. Id.
      In Chimney, we held that the court’s instruction cured the prejudicial effect of an improper
comment, when it was given promptly in response to an objection. Id. at 703-04. Here, in
response to Garcia’s timely objection, the court promptly instructed the jury to “disregard [the]
last statement of counsel for any purpose whatsoever.” However, when it appears that the
statement is clearly calculated to inflame the minds of the jury and is of such a character as to
suggest the impossibility of withdrawing the impression produced on their minds, an instruction
will not cure the prejudicial effect and there is error in not granting the motion. Grant v. State,
738 S.W.2d 309, 311 (Tex. App.—Houston [1st Dist.] 1987, writ ref’d) (citing Kelley v. State,
677 S.W.2d 34, 36 (Tex. Crim. App. 1984) (regarding improper evidence)); e.g., Reed v. State,
991 S.W.2d 354, 363-64 (Tex. App.—Corpus Christi 1999, pet. ref’d) (In a single-victim, single-assault case, references by the prosecutor in closing argument to other possible victims of child-sexual assault were not cured by a jury instruction.).
      Here, we do not find the comment to be of such character that its prejudicial effect could not
be cured by instruction. It was an indirect reference to Garcia’s failure to testify. Accordingly,
we find that the court’s instruction cured any prejudicial effect of the prosecutor’s comments, and
the court did not err in denying Garcia’s motion for mistrial. Garcia’s second issue is overruled.
JURY CHARGE 
      We have previously held that it is error for a court
to omit an instruction on accomplice-witness testimony, even when no objection was made. In the
Matter of M.E.R., 995 S.W.2d 287, 291 (Tex. App.—Waco 1999, no pet.). “The fact that
defense counsel failed to object to the omission of an instruction is only relevant in determining
which standard of harm to apply.” Id. We do not reach the issue of harm, however, because we
find no error in the omission of the instruction.
      When a witness has been indicted for the same offense as the defendant, the witness is an
accomplice witness as a matter of law. DeBlanc v. State, 799 S.W.2d 701, 708 (Tex. Crim. App.
1990). However, it is not necessary that she actually be indicted if the evidence is otherwise clear
that she is an accomplice. Blake v. State, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998). The
same principle applies if the person could be indicted, or was, of a lesser-included offense. Id.
(citing Ex parte Zepeda, 819 S.W.2d 874 (Tex. Crim. App. 1991)). If there is a fact question
about whether a witness is an accomplice, the jury should be instructed to decide that issue. 
DeBlanc, 799 S.W.2d at 708 (Tex. Crim. App. 1990). Garcia concedes that Martha Perez was
not an accomplice as a matter of law, but asserts that the record discloses evidence upon which
a jury could have found that Martha Perez was an accomplice as a matter of fact.
      “A person is an accomplice if he participates before, during, or after the commission of the
crime and can be prosecuted for the same offense as the defendant or for a lesser-included
offense.” Medina v. State, 7 S.W.3d 633, 641 (Tex. Crim. App. 1999) (citing Blake, 971 S.W.2d
at 454-55.). Mere presence at the scene of the offense does not make someone an accomplice. 
Blake, 971 S.W.2d at 454 (citing Creel v. State, 754 S.W.2d 205, 213 (Tex. Crim. App. 1988). 
Some affirmative act or omission is required. Id. (citing McFarland v. State, 928 S.W.2d 482,
514 (Tex. Crim. App. 1996)) (there must be an affirmative act which promotes the commission
of the offense). On the other hand, a person can be an accomplice although not present at the
scene of the crime. Id. (citing Goodwin v. State, 165 Tex. Crim. 375, 307 S.W.2d 264 (1957)). 
But simply knowing about a crime and failing to disclose it, or even concealing it, does not make
someone an accomplice. Id. (citing Easter v. State, 536 S.W.2d 223, 225 (Tex. Crim. App.
1976)).
      We do not believe the record shows Martha Perez was an accomplice. Martha, who was
twelve years old at the time of the shooting, testified that when she arrived at the park, Garcia,
Rivera, Carbajal and Perez were already there. She said that Garcia asked her to pose as a
prostitute to help him rob the three men. She said that she never answered him; she remained
silent because she was shocked by his question. She testified that she did not want to help Garcia
rob anyone and she did not do so. Rivera also testified that Martha did not pretend to be a
prostitute. Rather, Martha ran away when she heard gunshots. These facts show that Martha was
merely present, and they do not disclose an affirmative act or omission on her part. Blake, 971
S.W.2d at 454. We overrule Garcia’s third issue.
INEFFECTIVE ASSISTANCE OF COUNSEL
      In his fourth and final issue, Garcia argues that his trial counsel was ineffective for failing to
request the “accomplice witness rule” jury instruction as to Martha Perez. Because we find that
this instruction was not required, Garcia’s counsel could not have been ineffective for not
requesting it. Accordingly, we overrule Garcia’s fourth issue.
CONCLUSION

      Having overruled each of Garcia’s issues, we affirm the judgment.



                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and 
      Justice Gray
Affirmed
Opinion delivered and filed October 30, 2002
Do not publish
[CRPM]