Michael **GONZALEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–98–268–CR.

Court of Appeals of Texas, Waco.

June 9, 1999.

Dick Turner, Cleburne, L. Patrick Davis, Fort Worth, for appellant.

Dale S. Hanna, Dist. Atty., David W. Vernon, Asst. Dist. Atty., Cleburne, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## O P I N I O N

BILL VANCE, Justice.

A jury convicted Michael Gonzalez of aggravated kidnapping and sentenced him to 65 years in prison. TEX. PEN.CODE ANN. § 20.04 (Vernon Supp.1999). He appeals on two issues. First, he alleges that the court erred in failing to sustain a challenge for cause regarding a biased juror. Second, he asserts that his trial counsel was ineffective. We will overrule his first issue, find that he has not preserved the second, and affirm the judgment.

On October 31, 1997, Gonzalez accosted Meredith Allen, a high school senior, outside a Cleburne restaurant as she was unlocking her car. Gonzalez grabbed Allen's arm and forced her into the front passenger seat of his vehicle. During the struggle, Gonzalez threatened to stab her, grabbed her hair, and tore her blouse. Allen was able to escape through the driver's side door.

Two witnesses saw Allen in the car. One took down the license plate number before the car sped out of the parking lot. The police traced the number to Gonzalez.

## JUROR BIAS

■ Gonzalez' first issue complains that the court erred in failing to sustain his challenge for cause regarding a seated juror who had expressed bias or prejudice against him concerning punishment.

Following voir dire and after the jury had been seated, sworn, and released for the day, Juror Tonda Benson asked to approach the bench. Benson stated that she had entered the courthouse that morning with Gloria Boon, who had also been called for jury duty and was eventually seated on the jury. Benson paraphrased their conversation:

[Boon] said that they had better not pick her for the jury because she would fry the person or would put them in jail for life or fry the person. And I started laughing. She said: No, I'm not kidding. I believe in the death penalty strongly. And my grandfather—I believe it was a grandfather, I'm not sure—was in Sheriff's something or other and so was her brother-in-law or something or other and that she came from a family of people that just believe that way.

So I thought you should know that, you know, she already knows what she's going to sentence somebody to if she finds him guilty. As far as what she told me, I mean, I don't know that she wasn't completely kidding.... Could be nothing.

In response to the State's questions, Benson acknowledged that, at the time of this conversation: no one knew if it was a

criminal or civil trial; she did not know if Boon was "even serious or telling the truth"; it was a casual conversation about the criminal justice system rather than about the particular case; and nothing was mentioned about being predisposed on guilt. In response to defense counsel's questions, Benson stated that Boon seemed serious and predisposed on punishment.

Gonzalez asked the court to dismiss the jury, stating that Boon had not been completely honest in voir dire. The court asked if it would be appropriate to call Boon to question her. The State responded that the conversation had been a casual one before anyone knew what case was being conducted, that it was a general statement as to her belief in the death penalty, and that Boon had not been untruthful in voir dire because defense counsel had not asked any questions regarding punishment. Defense counsel argued that the jury was potentially poisoned and that questioning Boon "is just going to bring more of this to her attention [and] might enrage her." The court denied Gonzalez' motion for mistrial.

The following morning, Gonzalez again asked the court to dismiss the jury. Defense counsel asked to make a bill of exception. He recounted Benson's statements. He also stated that if Boon were called to the stand she would testify that "she is predisposed and that she was not honest and she did make the comments, and that she is not qualified to serve." The court asked defense counsel if he wished to call Boon to testify. Counsel responded, "If the Court would like Ms.

Boon." The Court indicated that it would call Boon into the courtroom. However, the State objected to counsel's rendition of how Boon and Benson would testify if called to the stand.

The Court then stated:

Let me just say this. It's the Defendant's Bill of Exception. If the Defendant wants to ask the Court to bring this juror in and be questioned under oath concerning this, you can do so. It's your Bill of Exception. If you want to do that, you can. But I'm going to leave that up to the Defendant.

Defense counsel explained that Gonzalez faced a "Catch 22" because if Boon "feels like she's been pushed into a corner by the defense ... [Gonzalez] won't get a fair trial." After conferring with his client, defense counsel stated that calling Boon to the stand would create animosity in her towards his client and would not be in Gonzalez' best interest. "I believe this is a matter best resolved not for the defense attorney but for the Court ... to be satisfied. I will not call [Boon] for my Bill of Exception." The court denied Gonzalez' motion for mistrial.

On appeal, Gonzalez cites *Brandon v. State*, 599 S.W.2d 567, 572 (Tex.Crim.App. 1979), for the proposition that a prospective juror who expresses bias and prejudice against an accused can almost never be rehabilitated and should be excused as a matter of law.[1] He argues that, "when it comes to the law, the Court should have questioned [Boon] *sua sponte* to remove any doubt."

1. In *Brandon*, the defendant was charged with murdering a Waco police officer. *Brandon v. State*, 599 S.W.2d 567, 569 (Tex.Crim. App.1979). A panel member testified that, because his brother-in-law was a Waco police officer, he had a bias and prejudice against the defendant that he could not overcome. *Id.* at 572. The court held that a prospective juror who expresses bias or prejudice against an accused can almost never be rehabilitated and should be excused for cause as a matter of law. *Id.*

The United State Supreme Court vacated the judgment in *Brandon* and remanded to the Court of Criminal Appeals for consideration in light of *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). *Brandon v. Texas*, 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981). The Court of Criminal Appeals abated the case in an unpublished opinion in 1982, and we have been unable to find any further opinion in the matter. *Brandon v. State*, 634 S.W.2d 728 (Tex.Crim.App. 1982) (unpublished per curiam opinion).

The State agrees that when a juror withholds material information in voir dire, the parties are denied the opportunity to meaningfully exercise their challenges. *See Armstrong v. State,* 897 S.W.2d 361, 363 (Tex.Crim.App.1995). However, it argues that defense counsel has the obligation to ask questions during voir dire calculated to elicit information which might indicate a juror's inability to be impartial and truthful. *Id.* at 363–64. "Unless defense counsel asks such questions, the material information which a juror fails to disclose is not really 'withheld.'" *Id.* at 364.

The Court of Criminal Appeals has commented on the difference between statements made during voir dire and those made outside of voir dire:

> In a non-courtroom context, a person may feel free to joke, embellish, or even lie outright about any number of subjects, including those related to jury service. Moreover, everyday language is often imprecise, in contrast to voir dire questioning in which attorneys attempt to procure precise answers to their questions.

*Quinn v. State,* 958 S.W.2d 395, 402 (Tex. Crim.App.1997) (during trial, juror had telephone conversation regarding sending defendant to prison).

During its voir dire, the State asked the panel members whether they knew Gonzalez, would honor the presumption of innocence, and would be able to consider the full range of punishment. The State questioned Boon individually on whether having a son working in law enforcement would cause her to believe the testimony of a police officer over other witnesses. She agreed that all witnesses should be evaluated on the same basis. Defense counsel asked whether any member of the panel had been the victim of a crime or had had a bad experience with a police officer. He questioned the members individually on whether they would hold it against Gonzalez if he did not put on any evidence. Boon responded that she would not re-

quire such evidence but would "like to hear a little something." Due to some confusion on the burden of proof and the defendant's right to remain silent, Boon was one of several panel members further questioned on these issues. She answered that she could follow the law that requires the State to prove its case and would not require the defendant to put on evidence.

We recognize that Gonzalez faced a dilemma in deciding whether to call Boon after her prior comments came to light. However, because he failed to pursue the information Benson brought forward to determine whether Boon had an actual bias *in this case,* we believe Gonzalez has failed to show that the juror should have been removed from the jury. Thus, we do not find that the court erred in denying his motion for mistrial after the jury was seated. Boon's comments, made outside of voir dire before she knew what type of trial she had been called for, are not unequivocal statements of bias that would automatically disqualify her from serving in this case. *See Quinn,* 958 S.W.2d at 402.

We overrule issue one.

## INEFFECTIVE ASSISTANCE

■ Gonzalez' second issue asserts that he was denied effective assistance of counsel. He points to four areas, alleging counsel was deficient in failing to: (1) perfect a bill of exception regarding Boon's possible bias; (2) conduct a meaningful voir dire; (3) object to extraneous-offense evidence during the punishment phase; and (4) conduct a voir dire examination of the State's expert. These complaints have not been presented to the trial court.

We have concluded that review of Gonzalez' complaints is barred by Rule 33.1(a) of the Rules of Appellate Procedure. TEX. R.APP. P. 33.1(a). The Rule provides that, as a prerequisite to presenting a complaint for appellate review, the record must show (1) a timely request, objection, or motion was made to the trial court stating the

grounds for the complaint and (2) a ruling on the request, objection or motion or a refusal to rule coupled with an objection to such refusal. *See id.* Applying the clear language of the Rule, we find that Gonzalez' complaints of ineffective assistance of counsel have not been preserved for our review.[2]

Furthermore, we have concluded that without an evidentiary record, review of most complaints of this nature is a waste of valuable judicial resources. The Court of Criminal Appeals has recognized the inherent difficulties in evaluating such claims:

> Generally, a claim which was previously raised and rejected on direct appeal is not cognizable on habeas corpus. *Ex Parte Acosta,* 672 S.W.2d 470, 472 (Tex. Crim.App.1984). *See also Ex Parte Schuessler,* 846 S.W.2d 850, 852 n. 6 (Tex.Crim.App.1993). However, this doctrine should not be applied where direct appeal cannot be expected to provide an adequate record to evaluate the claim in question, and the claim might be substantiated through additional evidence gathering in a habeas corpus proceeding. In most instances, the record on direct appeal is inadequate to develop an ineffective assistance claim. *Ex Parte Duffy,* 607 S.W.2d 507, 512–513 (Tex.Crim.App.1980). *See also Jackson v. State,* 877 S.W.2d 768, 772–773 (Tex. Crim.App.1994) (Baird, J. concurring); *Vasquez v. State,* 830 S.W.2d 948, 951 (Tex.Crim.App.1992) (Benavides, J. dissenting). Moreover, the inadequacy of the appellate record in these situations is due to the inherent nature of most ineffective assistance claims. The very ineffectiveness claimed may prevent the record from containing the information necessary to substantiate such a claim. *Duffy,* 607 S.W.2d at 513. Moreover, the trial record ordinarily does not reflect counsel's reasons for doing or failing to do actions of which the defendant complains. *Vasquez,* 830 S.W.2d at 951. While expansion of the record may be accomplished in a motion for new trial, that vehicle is often inadequate because of time constraints and because the trial record has generally not been transcribed at this point. *Jackson,* 877 S.W.2d at 772 n. 3. Further, mounting an ineffective assistance attack in a motion for new trial is inherently unlikely if trial counsel remains counsel during the time required to file such a motion. Hence, in most ineffective assistance claims, a writ of habeas corpus is essential to gathering the facts necessary to adequately evaluate such claims.

*Ex parte Torres,* 943 S.W.2d 469, 475 (Tex. Crim.App.1997). A substantial percentage of our criminal appeals now contain an issue concerning ineffective assistance of counsel. We have experienced all of the difficulties described in the *Torres* opinion, usually frustrated by the lack of a record upon which to base a meaningful decision.

 When a complaint of ineffective assistance of counsel is asserted in a timely filed motion for new trial, the motion must be "presented" to the trial court for consideration. *See Carranza v. State,* 960 S.W.2d 76, 77 (Tex.Crim.App.1998) (citing former TRAP Rule 31(c)(1), now TRAP Rule 21.6). "Presented" means that the record must show that the party moving for a new trial sustained the burden of (1) actually delivering the motion for new trial to the trial court or someone authorized to act for the court or (2) otherwise bringing the motion to the court's notice or attention. *See id.* at 79. This may be shown in several ways, such as the court's ruling on the motion for new trial or a docket notation setting the motion for a hearing. *Id.* When an accused properly presents a motion for new trial raising matters not determinable from the record, upon which the accused could be entitled to relief, the

---

2. Gonzalez is not necessarily without a remedy. *See, e.g., Ex parte Welch,* 981 S.W.2d 183

(Tex.Crim.App.1998).

trial court abuses its discretion in failing to hold a hearing under Rule 21.7. *Reyes v. State,* 849 S.W.2d 812, 816 (Tex.Crim.App. 1993) (citing former TRAP Rule 31(d), now TRAP Rule 21.7).

Counsel are cautioned against raising a claim of ineffective assistance of counsel in a motion for new trial and then failing to fully develop the record at the hearing.[3]

Because the complaints were not presented to the trial court, we overrule issue two.

Having overruled both of Gonzalez' issues, we affirm the judgment.

---

**3.** Assuming, of course, that a hearing is required upon the specific allegations made. We do not preclude the possibility that some claims of ineffective assistance of counsel may be determined from the trial record, but even

those must be first presented to the trial court. Tex.R.App. P. 33.1(a).

