Jerry Wayne **FULGIUM**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–98–283–CR.

Court of Appeals of Texas,
Waco.

Oct. 27, 1999.

109

Eric M. Albritton, Longview, for appellant.

Patrick C. Batchelor, Criminal District Attorney, Damara H. Watkins, Asst. District Attorney, Corsicana, Jim D. Vollers, Prosecuting State Attorney, Austin, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

# OPINION

TOM GRAY, Justice.

A man turned his pickup over in a ditch while following a friend home. Troopers with the Department of Public Safety found the man very intoxicated and stumbling along the road. He was arrested and immediately taken to jail. An empty cooler and empty beer cans were found at the scene of the accident. The friend described the man as slightly intoxicated prior to the wreck and testified that she saw his car slide from one side of the road to the other. Because of two prior driving while intoxicated convictions, the man was charged with felony driving while intoxicated. He was convicted. He appeals his conviction claiming that the evidence was legally and factually insufficient to prove he was intoxicated at the time of the accident and that his trial counsel rendered ineffective assistance. We affirm the judgment.

## SUFFICIENCY OF THE EVIDENCE

In his first two issues, Jerry Wayne Fulgium contends that the evidence was both legally and factually insufficient to support his conviction. Specifically, he contends that the State did not prove he was intoxicated at the time of the accident. To be convicted of driving while intoxicated, the State must prove a person is intoxicated while operating a motor vehicle in a public place. Tex. Pen.Code Ann. § 49.04(a) (Vernon Supp.1999). To be charged as a felony offense, the State must show that the defendant has two prior convictions for offenses relating to the operation of a motor vehicle, aircraft, or watercraft while intoxicated. Tex. Pen.Code Ann. § 49.09(b) (Vernon Supp.1999). Fulgium does not contest that he was the person driving the pickup in a public place or that he had previously been convicted two times of driving while intoxicated.

### Evidence

Because Fulgium contends that the evidence was both legally and factually insuf-

ficient to support his conviction, a discussion of the facts pertinent to Fulgium's specific issues is necessary.

David Poston, a trooper with the Department of Public Safety, and Trooper John Cabano were dispatched to an accident. En route, they came upon a man, who they identified as Fulgium, walking along the road. Fulgium admitted that he was the driver of the wrecked pickup.

Poston smelled a very strong odor of alcoholic beverages on Fulgium's breath. He performed a Horizontal Gaze Nystagmus (HGN) test on Fulgium and found six of six indications that Fulgium was intoxicated. Fulgium's eyes were dazed, glassy and very red. He also staggered and stumbled along the road, and had trouble standing in one place. Fulgium's speech was very thick and very slurred. Based on his observations, Poston determined that Fulgium was extremely intoxicated and placed him under arrest.

Trooper Cabano also believed, based on talking with and observing Fulgium and noting the smell of an alcoholic beverage on Fulgium's breath and his past experience with intoxicated people, that Fulgium was intoxicated. Because of his training, Cabano knew that just one can of beer could take an hour and a half to wear off. With the smell of an alcoholic beverage on Fulgium's breath, Cabano was of the opinion that Fulgium had consumed alcoholic beverages prior to the accident. He concluded that Fulgium would not have had the appearance and manners of being as intoxicated as he was when the troopers arrived had Fulgium not consumed alcoholic beverages more than 20 to 30 minutes prior to their arrival on the scene.

Mike Wolver was the deputy with the Navarro County Sheriff's Office who transported Fulgium to jail. After observing Fulgium, Wolver believed he was intoxicated. However, Wolver admitted that he was not able to determine when Fulgium became intoxicated.

Poston and Cabano proceeded to the accident scene where they found a pickup on its top in a ditch, well off the roadway. Cabano found a small cooler and a few empty beer cans at the scene of the accident. Poston met Debbie Tieman at the scene and discovered that she was the person who called for emergency assistance because of the wreck.

Tieman testified at trial that Fulgium had taken her to a residence in Navarro, Texas, to get her car. Fulgium then followed her from that residence. When she noticed Fulgium's headlights did not follow her around a curve in the road, she turned around and went back to the curve. She was distressed to locate Fulgium's pickup upside down in a ditch. She became concerned when she saw some blood in the overturned pickup and screamed for Fulgium. She heard no response. Tieman had no cellular phone, so she continued southbound on the road, past where she and Fulgium had turned onto the road, to the nearest residence and called for emergency assistance.

She had been with Fulgium for about an hour prior to the accident and did not see him drink; however, she thought he appeared slightly intoxicated. Tieman stated that Fulgium had been at work that day and did not drink on the job. She added that Fulgium could not have had more than a beer by the time he arrived at her house. Fulgium was not drinking when he arrived at her house and did not drink on the way to Navarro. Tieman did not know if he had any alcohol in his pickup.

Tieman explained her earlier conclusion that Fulgium was intoxicated because she saw the cooler across the roadway from the accident and felt it was incriminating. She speculated that Fulgium may have been slightly intoxicated when they left her house but then stated that he did not appear to be intoxicated. Tieman also testified that Fulgium may have been slightly intoxicated on the way to get her car because he had just left work and was happy and driving a little fast. She could tell that when Fulgium was following her back home, he was sliding from one side of the road to the other. Tieman added that the sliding could have been due to the gravel on the road. She estimated that no more than 20 minutes had passed from the time she lost sight of Fulgium's headlights until she called for emergency assistance. She did not know what he did during that time period.

**Applicable Law**

We review a legal sufficiency question by viewing the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Alvarado v. State,* 912 S.W.2d 199, 207 (Tex.Crim.App.1995); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988). The review is the same for circumstantial evidence as it is for direct evidence. *See Geesa v. State,* 820 S.W.2d 154, 159 (Tex. Crim.App.1991); *Reeves v. State,* 969 S.W.2d 471, 478 (Tex.App.—Waco 1998, pet. ref'd). The verdict must stand unless it is found to be irrational or unsupported by more than a "mere modicum" of the evidence. *Moreno,* 755 S.W.2d at 867. Additionally, the trier of fact is the sole judge of the weight and credibility of the witnesses and may believe all, none, or part of any witness' testimony. *DeLeon v. State,* 937 S.W.2d 129, 131 (Tex.App.—Waco 1996, pet. ref'd).

In reviewing a factual sufficiency claim, the review begins with the assumption that the evidence is legally sufficient. *Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We are guided by the Court of Criminal Appeals when conducting a factual sufficiency review. We must first give deference to the fact finder's findings. The Code of Criminal Procedure provides that the fact finder is the judge of the facts. We are not free to reweigh the evidence and set aside a verdict

merely because we feel that a different result is more reasonable. *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997); *Clewis v. State,* 922 S.W.2d 126, 135 (Tex. Crim.App.1996). We may not reverse a decision simply because we disagree with the result. We must defer to the fact finder's findings and may find the evidence factually insufficient only where necessary to prevent a manifest injustice. *Cain,* 958 S.W.2d at 407.

■ Additionally, we must review all of the evidence. *Id.* at 408; *Clewis,* 922 S.W.2d at 129. We must consider the evidence as a whole, not viewing it in the light most favorable to either party. *Cain,* 958 S.W.2d at 408. A decision is not manifestly unjust as to the accused merely because the fact finder resolved conflicting views of the evidence in favor of the State. *Id.* at 410. Thus, as the reviewing court, we view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain,* 958 S.W.2d at 407; *Clewis,* 922 S.W.2d at 129.

**Application of Law to Facts**

■ The evidence shows Fulgium was involved in a one vehicle accident. DPS troopers spotted Fulgium walking along the road. Fulgium admitted to being the driver of the wrecked pickup. Fulgium's breath smelled very strongly of alcoholic beverages; all six indicators of intoxication were present in his eyes as determined by the HGN test; his eyes were dazed, glassy and very red; his speech was very thick and very slurred; and he had a great deal of trouble with maintaining his balance. At the scene of the accident, a cooler and a few empty beer cans were found. One trooper concluded that Fulgium had consumed alcoholic beverages before the accident.

Prior to the accident, Fulgium had taken Debbie Tieman to Navarro to pick up her car. She did not see him drink but thought he appeared slightly intoxicated. Fulgium's pickup slid from one side of the road to the other as he followed Tieman home. When Tieman drove around a curve, she noticed that Fulgium was no longer following her. She drove back to investigate and found Fulgium's wrecked pickup, but did not find Fulgium in the area. After discovering blood in the cab of the wrecked pickup, Tieman proceeded to the nearest house to call for emergency assistance.

Based on this evidence, we believe any rational trier of fact could have found the essential elements of the offense, including that Fulgium was intoxicated at the time of the accident, beyond a reasonable doubt. Thus, the evidence is legally sufficient to support the judgment of conviction, and Fulgium's first issue is overruled.

■ A review of all the evidence, not just the evidence in support of the conviction, is necessary for a factual sufficiency review. To conduct that review, we consider not only the testimony set out above in the legal sufficiency review, but also *additional* testimony, primarily from Tieman. In addition to testifying that Fulgium was slightly intoxicated, Tieman also testified that he had come straight from work to her house. She asserted that he did not drink at work. Fulgium was not drinking when he arrived at Tieman's house and did not drink on the way to Navarro. Tieman was with him for approximately one hour prior to the accident and did not see him drink. When driving home, Tieman testified that she saw Fulgium's pickup slide from one side of the road to the other. She later qualified that testimony by attributing his poor driving possibly to the gravel on the road. Tieman approximated that not more than 20 minutes had passed from the time she lost sight of Fulgium until the time she called for emergency assistance. She admitted that she did not know what Fulgium did during those twenty minutes. Additionally, Deputy Mike Wolver admitted that he

could not determine when Fulgium became intoxicated.

The trial court was the fact finder and we must give due deference to his findings. In examining all the evidence, Tieman's wavering testimony regarding the possible intoxication of Fulgium prior to the accident was not so overpowering, especially in light of the troopers' testimony, that the verdict would be considered so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Fulgium's second issue is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his third and fourth issues, Fulgium contends that his counsel rendered ineffective assistance at trial. Specifically, in his third issue, Fulgium asserts his counsel was ineffective because he had a conflict of interest as a result of having previously represented Debbie Tieman. Fulgium claims his trial counsel did not impeach Tieman with her known prior felony conviction because this conflict clouded his attorney's judgment. This issue was raised in a motion for new trial, and an evidentiary hearing was held to develop the relevant facts. The issue was properly preserved. *See* Tex.R.App. P. 33.1(a); *Cf. Gonzalez v. State,* 994 S.W.2d 369, 372–373 (Tex.App.—Waco 1999, no pet.).

**Applicable Law**

A claim of ineffective assistance of counsel requires a defendant to show that counsel's performance was deficient to the extent that counsel failed to function as "counsel" guaranteed by the Sixth Amendment and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Jackson v. State,* 877 S.W.2d 768 (Tex.Crim.App.1994). In order to show prejudice, the defendant must show that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Valencia v. State,* 946 S.W.2d

81, 83 (Tex.Crim.App.1997); *Chambers v. State,* 903 S.W.2d 21, 32 (Tex.Crim.App. 1995). The defendant has the burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996).

Our review of a claim of ineffective assistance of counsel is highly deferential. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *McFarland,* 928 S.W.2d at 500. We must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable representation and that the challenged action might be considered sound trial strategy. *McFarland,* 928 S.W.2d at 500; *Jackson,* 877 S.W.2d at 771. The defendant must affirmatively prove that the acts or omissions alleged to constitute ineffective assistance of counsel fall below the professional norms for reasonableness. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *McFarland,* 928 S.W.2d at 500. We will not second-guess through hindsight the strategy of trial counsel nor will the fact that another attorney might have pursued a different course of action support a finding of ineffectiveness. *Hawkins v. State,* 660 S.W.2d 65, 75 (Tex.Crim.App.1983).

After proving error, the defendant must affirmatively prove prejudice as a result of those acts or omissions. *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067; *McFarland,* 928 S.W.2d at 500. Counsel's error, even if professionally unreasonable, does not warrant setting the conviction aside if counsel's error had no effect on the judgment. *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. The defendant must prove that counsel's errors, judged by the totality of the representation and the totality of the evidence before the jury, denied him a fair trial. *McFarland,* 928 S.W.2d at 500. If the defendant fails to make the required showing of either deficient performance or prejudice, his claim must fail. *Id.*

In order to meet the *Strickland* standard in a conflict of interest case, the defendant must first show that trial counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067; *Banda v. State*, 890 S.W.2d 42, 60 (Tex.Crim.App.1994), *cert. denied*, 515 U.S. 1105, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995). If the defendant demonstrates such a ˙ conflict, then the second prong of the *Strickland* test will be met because prejudice is presumed. *Banda*, 890 S.W.2d at 60. Failure to make the required showing of a conflict of interest will defeat the ineffectiveness claim. *Id.*

■ An "actual conflict of interest" exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests to the detriment of his client's interest. *Monreal v. State*, 947 S.W.2d 559, 564 (Tex.Crim.App.1997). The mere showing of a possible conflict of interest is not sufficient to prevail on a claim of ineffective assistance of counsel. *Pollan v. State*, 612 S.W.2d 594, 596 (Tex.Crim.App.1981); *Wolf v. State*, 674 S.W.2d 831, 844 (Tex. App.—Corpus Christi 1984, pet. ref'd).

**Conflict of Interest**

■ Fulgium claims that his trial counsel had a conflict of interest after discovering that Tieman, a former client from the 1980's, was the State's key witness. Fulgium contends the conflict compromised his right to loyal representation because trial counsel had an ongoing duty of loyalty to Tieman. Fulgium acknowledges that he raised no objection to his counsel's continued representation, but claims that an actual conflict existed because the past representation of Tieman "chilled" his counsel's ability and "probable desire" to fully investigate Tieman's story and prevented his counsel from impeaching Tieman with her prior felony conviction.

The Corpus Christi Court of Appeals was faced with a similar situation in *Wolf*. The appellant, convicted for murdering her ex-husband, alleged ineffective assistance of counsel because her retained trial counsel had represented her ex-husband in their divorce which was potentially the motive for the murder. The Corpus Christi court explained that the record did not support this alleged conflict as a situation where an attorney divides his loyalty between two present clients or where an attorney has a continuing duty to his former client or even where the attorney is financially pressured to work less vigorously for the accused. *Wolf*, 674 S.W.2d at 843. The appellant retained her counsel and never objected to his representation of her. Based on the record, the court stated that the circumstances presented only raised an issue of trial counsel's judgment in agreeing to represent an accused whose potential motive related to a case in which counsel had previously been involved as an adversary. *Id.* at 844. The court would not speculate about possible conflicts of interest when the circumstances did not show an actual conflict as a matter of law or fact. *Id.*

As in *Wolf*, Fulgium's contentions are not supported by the record. At the hearing on Fulgium's motion for new trial, his trial counsel testified that he had previously represented Tieman in the 1980's and was aware of her conviction on a felony drug offense. Counsel did not interview Tieman because Fulgium felt like she would be favorable and because he believed Fulgium had already talked with her. Counsel may have mentioned his previous representation of Tieman to Fulgium, but did not specifically recall if he actually mentioned that fact. He did not know why he would not have mentioned the prior representation.

Counsel agreed that he could have impeached Tieman but did not do so because her overall testimony had not hurt his defense. Counsel further stated that he believed Tieman had incorrectly testified

when she said Fulgium had been at work the day of the accident and did not drink when at work. Counsel had different information about Fulgium's work schedule. He thought that if Tieman wanted to say Fulgium was at work, he would allow that testimony. This, he stated, was a very important reason why he did not impeach Tieman.

No testimony was developed at the new trial hearing to show trial counsel's past representation had anything to do with his decisions not to directly interview or impeach Tieman. Nothing was produced to show that trial counsel even had a continuing obligation to Tieman. Fulgium has not shown that his trial counsel actively represented conflicting interests and that an actual conflict existed which adversely affected his counsel's performance. The record does not indicate Fulgium's trial counsel's failure to interview or impeach Tieman was due to his past representation of her. Fulgium's contentions, at most, could be said to raise a concern as to his trial counsel's judgment in representing Fulgium when he had represented Tieman many years ago. But, given the number of years elapsed since the prior representation and lack of any relevance between his representation of her and his representation of Fulgium, this concern is completely dispelled. Fulgium wants this Court to imply a conflict of interest in this case. We cannot. Implied conflicts are not sufficient to support a claim of ineffective assistance of counsel. Fulgium's third issue is overruled.

**General Ineffectiveness**

In his fourth issue, Fulgium contends that various actions or omissions by his trial counsel rendered him ineffective. He complains specifically of five acts or omissions. They are:

(1) Counsel ineffectively cross-examined Trooper Cabano who established Fulgium's intoxication;

(2) Counsel erred by asking Tieman what she observed to suggest that Fulgium was intoxicated. Such

question lead to testimony not otherwise developed on direct-examination;

(3) Counsel failed to object to Tieman's statement about why she thought Fulgium was intoxicated as a nonresponsive answer;

(4) Counsel failed to properly object to testimony about the Horizontal Gaze Nystagmus test; and

(5) Counsel failed to properly investigate the case, specifically counsel did not interview Tieman who would have told him Fulgium was not intoxicated when he drove her to Navarro.

*Pre-trial Interview*

At the motion for new trial hearing, Debbie Tieman testified that had Fulgium's trial counsel interviewed her, she would have told him that Fulgium *was not intoxicated* when he drove her to Navarro to get her car. Fulgium's counsel testified that he did not interview Tieman for reasons enumerated earlier in this opinion. He also stated that he could not send a staff member to interview her because he had no staff. Additionally, he stated that Fulgium had informed him that Tieman would be a favorable witness. Counsel then testified that he did not interview Tieman because he understood that Fulgium had already talked with her.

At trial, Tieman testified that Fulgium was not drinking when he arrived at her house and did not drink on the way to Navarro. She also stated that he had come directly from work and did not drink while on the job. Based on the motion for new trial testimony, Tieman leaves the impression that she believed Fulgium was not intoxicated. However, that question was asked by the State at trial, and Tieman testified that she thought Fulgium *was slightly intoxicated.* Her sworn testimony at trial is contrary to her sworn testimony at the motion for new trial hearing.

Fulgium does not attempt to explain how this difference in Tieman's testimony is relevant to the question of the alleged ineffective assistance of counsel for failure to conduct an interview prior to trial or how it requires a reversal of his conviction for ineffective assistance of counsel. We cannot see how failing to elicit a different response in a pretrial interview to a question asked at trial constitutes deficient performance by trial counsel or that it prejudiced the defense.

*Horizontal Gaze Nystagmus*

■ Fulgium also contends that his counsel was ineffective because he did not properly object to the testimony by Trooper Poston of his administration of the Horizontal Gaze Nystagmus (HGN) test. Trooper Poston's testimony about the HGN test and trial counsel's objection are as follows:

Poston: The horizontal gauge, (sic) nystagmus test is the only test that I had Mr. Fulgium do at the time. I didn't ask him to do any kind of balance test, because he had some minor injuries, had been involved in an accident which he admitted to before this happened.

State: Okay. What was the results of the horizontal gauge (sic) nystagmus test that you performed on the defendant?

Poston: Out of the six clues of the horizontal nystagmus test—

Counsel: Your Honor, we object. It's calling for a conclusion, the predicate's not been properly laid.

Court: I overrule the objection.

Poston: There was (sic) six clues indicated in Mr. Fulgium's eyes during the horizontal gauge (sic) nystagmus test. That would be lack of smooth pursuit in both eyes, would be two clues, a distinct nystagmus. At maximum deviation would be two clues, and onset prior to 45 degrees in both eyes, would be the last two, equaling six.

■ The Court of Criminal Appeals has developed an admissibility standard for testimony concerning the HGN. The witness testifying must be qualified as an expert on the HGN test. This is satisfied by proof that the officer has received a certification by the State to administer the test. *Emerson v. State*, 880 S.W.2d 759, 769 (Tex.Crim.App.), *cert. denied*, 513 U.S. 931, 115 S.Ct. 323, 130 L.Ed.2d 284 (1994). Under the facts in *Emerson*, the Court of Criminal Appeals determined that a practitioner certification issued by the State of Texas would be sufficient to show the officer's qualification as an expert. *Id.* However, the proof necessary to establish that an officer is certified is left to the discretion of the trial court. *See Kerr v. State*, 921 S.W.2d 498, 502 (Tex.App.—Fort Worth 1996, no pet.) (citing *Sterling v. State*, 800 S.W.2d 513, 521 (Tex.Crim.App. 1990), *cert. denied*, 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991)).

■ Even though Fulgium's trial counsel did not specify *"Emerson "* in his objection or the absence of proof that Poston was certified, he informed the trial court that the proper predicate had not been laid for this testimony. It is obvious that the proper predicate mentioned was whether the officer was certified to administer the test. Ineffective assistance of counsel does not result from an imprecise objection where the thrust of the objection is obvious. *See Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Crim.App.1977) (no waiver of error results with a general or imprecise objection where it is clear the objections were obvious to the court).

Nevertheless, Fulgium had the opportunity at the motion for new trial hearing to develop a record as to why his counsel objected the way he did and whether Trooper Poston did not have the necessary training to administer the HGN test. Fulgium did not develop any testimony regarding the administering of the HGN test or the resulting objection by his trial counsel. More importantly, Fulgium did not show at the motion for new trial that Po-

ston was not certified to administer the HGN test. Fulgium has the burden to prove the ineffectiveness of his counsel and without such a record, we cannot meaningfully address this contention. *See Pena–Mota v. State,* 986 S.W.2d 341, 346 (Tex. App.—Waco 1999, no pet.); *see also Gonzalez,* 994 S.W.2d at 373 (without an evidentiary record, review of most complaints of this nature is a waste of valuable judicial resources).

*Failure to Object*

Fulgium also complains that his trial counsel failed to object to the "musings" of Tieman about why she thought Fulgium was slightly intoxicated. He felt the answer was non-responsive to the question asked and added more support for a finding of intoxication. On cross-examination, the following exchange between trial counsel and Tieman took place:

Counsel: And so if the officers found him and talked to him, how long from the time you lost sight of the headlights to the time the [o]fficers arrived at the accident scene was it, do you recall?

Tieman: Probably about 30 minutes. Yes, I was waiting in the roadway for the patrol car or whoever was to respond to it.

Counsel: So then if there is a twenty minute gap between the time you called during that period of time Jerry Fulgium would have already turned his truck over; is that right?

Tieman: Oh, yes, sir, uh-huh, yes.

Counsel: And if the patrol officers found him sometime between that 20 and 30 minute period, you would not be able to say what condition he was in, whether he was intoxicated or not; would you?

Tieman: No, not, no, not really. *But on the way, now, now, Rob, on the way to Mr. Bamburg's house, Jerry seemed, he may have been slightly intoxicated, because he had just gotten off work. He was, you know, kind of happy,*

*and he was driving a little fast, you know.* (emphasis added).

Fulgium had the opportunity to ask his trial counsel at the motion for new trial hearing why he did not object to Tieman's non-responsive answer to his question. He did not take that opportunity. Fulgium suggests by his complaint that this non-responsive answer allowed new evidence of his intoxication in the record. It did not. On direct-examination, Tieman had already told the prosecutor that she thought Fulgium was slightly intoxicated. This was not new information.

Even if his counsel had objected to Tieman's answer, Fulgium did not show that it would have been sustained. *Vaughn v. State,* 888 S.W.2d 62, 74 (Tex. App.—Houston [1st Dist.] 1994), *aff'd* 931 S.W.2d 564 (Tex.Crim.App.1996). Generally, when a question calls for a "yes" or "no" answer, a witness is allowed to explain the answer. *Smith v. State,* 763 S.W.2d 836, 841 (Tex.App.—Dallas 1988, pet. ref'd). It is obvious that Tieman was attempting to explain her answer. Fulgium ultimately wants us to second-guess his trial counsel's strategy, which we will not do. He had the opportunity to place this issue in the record, and he did not. We will not presume this failure to object rendered his counsel's performance deficient. *See Pena–Mota,* 986 S.W.2d at 346; *Gonzalez,* 994 S.W.2d at 373.

*Ineffective Cross-examination*

Generally, Fulgium complains that his trial counsel ineffectively cross-examined both Tieman and Trooper Cabano which lead to answers regarding Fulgium's intoxication before and at the time of the accident. Again, counsel's reasons for this questioning were not developed at the new trial hearing. We will not presume ineffectiveness of counsel and second-guess counsel's reasons simply because Fulgium's new counsel would have pursued the case and the questioning differently. *See*

*Hawkins,* 660 S.W.2d at 75; *Gonzalez,* 994 S.W.2d at 373.

Fulgium bears the burden of proving his counsel's performance was deficient and that deficient performance prejudiced the defense. Based on the totality of the representation and the totality of the evidence, Fulgium did not meet his burden. His claim of ineffective assistance of counsel must, therefore, fail, and his fourth issue is overruled.

## CONCLUSION

Having overruled all four issues, the trial court's judgment is affirmed.