**Opinion issued July 26, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00349-CR

———————————

**FERNAND SANTIAGOVARGAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case No. 1458398**

## MEMORANDUM OPINION

A jury convicted appellant Fernand SantiagoVargas of capital murder. The court sentenced him to life in prison, without the possibility of parole. *See* TEX. PENAL CODE §§ 19.03(a)(2), 12.31(a)(2). SantiagoVargas raises two issues on appeal. He contends that he was denied effective assistance of counsel due to an

actual conflict of interest arising from his trial lawyer's prior representation of a witness. He further contends that after the jury sent a note that indicated a deadlock, the trial court erred by failing to issue an *Allen* charge ordering the jurors to continue deliberating.

We conclude that SantiagoVargas has failed to establish that there was an actual conflict of interest, and he did not preserve for review a complaint of error about the court's response to the jury note. Accordingly, we affirm.

## Background

The complainant, Michael Phelan, operated a smoke shop and bought inventory from Umair Ghaffar. They developed a friendship, and Ghaffar visited Phelan's smoke shop once or twice a week to socialize.

One evening, Ghaffar, Phelan, and Phelan's brother-in-law, Michael Moya, were "hanging out" in a back room of the smoke shop. Moya left the room to tend to what the group presumed was a customer who had entered the shop. However Moya encountered three men with guns, and they shot at him. The men made their way to the back room, and "they started shooting."

Phelan ran away, while Ghaffar hid behind a couch. After the gunfire stopped, Ghaffar arose and saw Phelan with blood around him, laying on an outdoor ramp at the back of the building. Phelan later died from multiple gunshot wounds.

2

Detective Condon of the Houston Police Department recovered video surveillance footage that depicted the smoke shop entrance during the shooting. After interviewing witnesses and viewing the video, Det. Condon determined that three men entered the shop intending to "steal narcotics and money."

A short clip of the video, which showed the three suspects entering and exiting the shop, was released to the public. Based on resulting tips, Det. Condon identified four suspects: appellant Fernand SantiagoVargas, Jonny Enamorado, Jose Rivera, and Belisario Lopez. All four men were arrested.

Upon his arrest, SantiagoVargas admitted in a recorded interview that he was involved in the shooting. He stated that he, Enamorado, and Rivera entered the smoke shop with guns to commit a robbery, while Lopez waited for them in the car. He also admitted to shooting his gun while in the shop. SantiagoVargas was indicted for capital murder, and the case was tried to a jury.

At trial, the State called several witnesses, including Ghaffar, Det. Condon, and Enamorado. An edited version of the surveillance video recovered by Det. Condon was played for the jury. The recording of SantiagoVargas's interview, which was conducted in Spanish, also was entered into evidence along with a certified transcription of the interview and an English translation. Det. Condon testified that illegal narcotics were recovered from the shop, and he believed there was a possibility that drugs were being sold from that location. Enamorado

3

testified that the group had information that there was cocaine in the shop, and they planned to steal it.

SantiagoVargas was represented at trial by attorney James Crowley. During cross-examination of Ghaffar, Crowley elicited confirmation that he had represented Ghaffar previously in a Fort Bend County case that resulted in a family-violence assault conviction and in a Harris County case that resulted in a misdemeanor theft conviction.

SantiagoVargas testified on his own behalf. He admitted that he and the others planned to rob the smoke shop for money. On the day of the shooting, three of them entered the shop with loaded firearms. He testified that "everyone was shooting," including himself, and he admitted that he shot at Phelan.

At the close of evidence, the jury was charged on capital murder, felony murder, and aggravated robbery. The court further instructed the jury:

> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, or if you are unable to agree [that the defendant is guilty of capital murder], you will next consider whether the defendant is guilty of the lesser offense of felony murder.

The charge also included a general unanimity instruction.

Following closing arguments, the jury began deliberations. After less than two hours, the jury submitted to the court a note with three questions. In the first question, the jury asked:

> What if we do not have a unanimous decision for capital murder[?] [D]o we then have to make a decision that it is a felony murder? Is there an option of not agreeing.

The court instructed the jury to refer to the charge. The jury found SantiagoVargas guilty of capital murder. As required by law, the court sentenced him to life in prison without the possibility of parole. *See* TEX. PENAL CODE § 12.31(a)(2).

SantiagoVargas appealed.

## Analysis

### I. Ineffective assistance of counsel

In his first issue, SantiagoVargas contends that he was denied his rights to effective assistance of counsel and due process of law because his trial counsel had an actual conflict of interest arising from his prior representation of Ghaffar. This issue is raised for the first time on appeal. He argues that because Ghaffar was "a recent and repeat client" of Crowley, his counsel had a continuing duty to the witness that prevented him from conducting a thorough cross-examination. Specifically, SantiagoVargas asserts that Crowley did not fully question Ghaffar about "his involvement in the illegal activities that occurred in the usual course of the smoke shop's business."

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685–86, 104 S. Ct. 2052, 2063 (1984). This includes the right to conflict-free representation. *Cuyler v.*

5

*Sullivan*, 446 U.S. 335, 348–50, 100 S. Ct. 1708, 1718–19 (1980). To prevail on a claim of ineffective assistance due to a conflict of interest, an appellant must show that trial counsel had an actual conflict of interest, and the conflict actually affected the adequacy of counsel's representation in specific instances. *Id.* at 349–50, 100 S. Ct. at 1719; *Acosta v. State*, 233 S.W.3d 349, 356 (Tex. Crim. App. 2007); *Ex parte Morrow*, 952 S.W.2d 530, 538 (Tex. Crim. App. 1997). An appellant who establishes both of these requirements need not also demonstrate prejudice to obtain relief, as is typically required under the *Strickland* standard for ineffective-assistance claims. *Cuyler*, 446 U.S. at 349–50, 100 S. Ct. at 1719; *Acosta*, 233 S.W.3d at 352–53. In the absence of evidence showing otherwise, we presume that counsel rendered adequate assistance, and that his actions and decisions were reasonably professional and motivated by sound trial strategy. *See Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066; *see also Jackson v. State*, 877 S.W.2d 768, 772 (Tex. Crim. App. 1994).

In this context, an "actual conflict of interest" exists "if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests (perhaps counsel's own) to the detriment of his client's interest." *Acosta*, 233 S.W.3d at 355 (quoting *Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997)). A potential conflict of interest, without more, is insufficient to merit the reversal of a conviction. *Cuyler*, 446 U.S. at 350, 100 S. Ct. at 1719;

6

*Lopez v. State*, 428 S.W.3d 271, 283 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Rather, an appellant must demonstrate that his counsel actually acted on behalf of those other interests during the trial. *Lopez*, 428 S.W.3d at 283. Although a potential conflict may become an actual conflict, absent a showing that the conflict materialized, we will not "speculate about a strategy an attorney might have pursued, but for the existence of a potential conflict of interest." *Routier v. State*, 112 S.W.3d 554, 585 (Tex. Crim. App. 2003).

The fact that appointed trial counsel represented a witness at a prior time does not, by itself, establish that he was required to choose between advancing his client's interest in a fair trial and advancing other interests to the detriment of his client's interest. *See Price v. State*, No. 01-09-01082-CR, 2011 WL 1587520, at *4–5 (Tex. App.—Houston [1st Dist.] Apr. 21, 2011, pet. ref'd) (mem. op., not designated for publication). In analyzing whether counsel's prior representation of a witness created an actual conflict, Texas courts have considered the recency of the prior representation, whether it had any relevance to counsel's representation of the appellant, and whether counsel obtained any confidential information relevant to the appellant's prosecution. *See Lopez*, 428 S.W.3d at 283–84; *Barbaro v. State*, 115 S.W.3d 799, 802 (Tex. App.—Amarillo 2003, pet. ref'd); *Fulgium v. State*, 4 S.W.3d 107, 115 (Tex. App.—Waco 1999, pet. ref'd); *Price*, 2011 WL 1587520, at *4–5.

At the start of his cross-examination of Ghaffar, Crowley established that he had represented the witness on two prior occasions. Although SantiagoVargas asserts that the representation was recent, apart from the short exchange acknowledging the previous relationship, the record lacks additional details about the prior representations, including when they took place. Crowley's questions indicated that his past representations of Ghaffar resulted in a family-violence assault conviction in Fort Bend County and a misdemeanor theft conviction in Harris County. Nothing in the record suggests that either case had any relation to Crowley's representation of SantiagoVargas, or that he obtained any information in either case that was relevant to SantiagoVargas's prosecution. The record also lacks any evidence that Crowley had a continuing obligation to Ghaffar as a result of the prior representations. *See, e.g.*, *Fulgium*, 4 S.W.3d at 115 (noting that number of years elapsed and lack of relevance between counsel's prior representation and representation of client dispelled concerns that prior representation affected counsel's judgment).

To support his contention that the prior representations created conflicting interests, SantiagoVargas relies upon one specific question Crowley asked during cross-examination of Ghaffar: "you were not connected in any way with the business end of this particular place, correct?" Ghaffar replied that he was not. SantiagoVargas contends that by this question, Crowley "appeared to give Ghaffar

8

an opportunity to quickly resolve the obvious questions that the jury likely had" about his involvement in any illegal drug transactions that may have occurred at the smoke shop. This contention assumes that counsel's question referred to the suspected sale of illegal drugs at the smoke shop. However, the record is not clear whether the question referenced the sale of illegal drugs or the shop's legitimate business of selling smoking devices and supplies. Further, Ghaffar already had testified during direct-examination that he never saw any indication that illegal narcotics were being sold or purchased at the store. Thus, the nature of Ghaffar's involvement with the smoke shop already had been addressed during his direct testimony. In any case, we will not speculate about the meaning of the question, nor will we speculate as to counsel's reason for asking it. *See Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066; *Jackson*, 877 S.W.2d at 772.

SantiagoVargas also characterizes Ghaffar as a "repeat customer" of trial counsel. He asserts that "at the very least" Crowley's own competing interest in receiving business from Ghaffar in the future is a "cause for concern." To reach the conclusion that Crowley's conduct at trial was affected by his interest in potential future representation of Ghaffar would require this court to make a number of assumptions that are not supported by the record. Implied conflicts of interest do not suffice to support an ineffective-assistance claim. *See Fulgium*, 4 S.W.3d at 115.

SantiagoVargas did not file a motion for new trial, which could have given him the opportunity to question Crowley about his decisionmaking and trial strategy. The record is silent as to any matters, if any, upon which Crowley could have impeached Ghaffar. This court will not speculate that Crowley's cross-examination of any witness was somehow affected by ongoing duties he had to a former client. *See Lopez*, 428 S.W.3d at 283–84.

We conclude that any conflict of interest in this case is merely speculative and thus cannot support a claim of ineffective assistance. *See Cuyler*, 446 U.S. at 350, 100 S. Ct. at 1719; *Thompson v. State*, 94 S.W.3d 11, 20–21 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). SantiagoVargas has failed to demonstrate the existence of an actual conflict of interest. Accordingly, we overrule his first issue.

## II.  *Allen* **charge**

In his second issue, SantiagoVargas argues that the trial court erred by failing to issue an *Allen* charge after the jury sent a note indicating a "deadlock" between capital murder and felony murder. An *Allen* charge attempts to break a deadlocked jury by reminding jurors that if they are unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve. *See Allen v. United States*, 164 U.S. 492, 501, 17 S. Ct. 154, 157 (1896); *Torres v. State*, 961 S.W.2d 391, 393

n.1 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). It encourages the jurors to resolve their differences without coercing one another or violating their individual choices. *Torres*, 961 S.W.2d at 393 n.1.

The Court of Criminal Appeals has defined three categories of rights, each of which require the application of different error-preservation rules: (1) absolute requirements and prohibitions, which cannot be waived or forfeited by either party; (2) waivable-only rights, which must be implemented unless expressly waived; and (3) forfeitable rights, which are forfeited unless requested by the litigant. *See Marin v. State*, 851 S.W.2d 275, 278–79 (Tex. Crim. App. 1993). SantiagoVargas contends that although he did not object to the court's response to the jury note, he is entitled to raise this issue for the first time on appeal because the right to a unanimous verdict is a *Marin* category-two right that cannot be forfeited by inaction alone.

Although SantiagoVargas's brief presents this complaint as an issue of jury unanimity, a complaint about the trial court's response to a jury communication is analyzed under either article 36.14 or article 36.27 of the Code of Criminal Procedure. *See Daniell v. State*, 848 S.W.2d 145, 147–48, nn.3–4 (Tex. Crim. App. 1993). The court's substantive response to a jury question during deliberations has been characterized by the Court of Criminal Appeals as "an additional or supplemental jury instruction" that must be analyzed under article 36.14, which

11

governs the court's charge. *Id.* at 147; *see also Lucio v. State*, 353 S.W.3d 873, 875 (Tex. Crim. App. 2011). Article 36.27 applies to complaints about the form of a communication between the judge and jury. *See Daniell*, 848 S.W.2d at 147 n.3. A communication from the court that merely refers the jury to the original charge does not constitute an additional instruction. *See Earnhart v. State*, 582 S.W.2d 444, 450 (Tex. Crim. App. 1979).

The court is required to answer communications of the jury and to give additional instructions upon questions of law when the request is proper. *See Gamblin v. State*, 476 S.W.2d 18, 20 (Tex. Crim. App. 1972) (citing TEX. CODE CRIM. PROC. art. 36.27); *see also Lucio*, 353 S.W.3d at 875 & n.2. If the request is improper, the court should refer the jury to the court's charge. *See Gamblin*, 476 S.W.2d at 20. The court's response to a jury communication must be written, and before the answer is given to the jury, the court must exercise "reasonable diligence" to secure the presence of the defendant and his counsel, and the defendant or his counsel must be given the opportunity to respond. TEX. CODE CRIM. PROC. art. 36.27. The court's written response must be read in open court unless expressly waived by the defendant. *Id.*

When the record is silent as to how the court's response was presented to the jury, as it is here, we presume that the response was made in open court and in appellant's presence as required by article 36.27. *See Green v. State*, 912 S.W.2d

189, 192 (Tex. Crim. App. 1995); *Moore v. State*, 278 S.W.3d 444, 452 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We also presume that the appellant had an opportunity to object, and that he agreed to the trial court's response. *See Green*, 912 S.W. 2d at 192–93.

Because the record does not reflect that SantiagoVargas made a timely objection concerning the trial court's response to the jury communication, he did not preserve anything for review on this issue. *See* TEX. R. APP. P. 33.1(a); *see also Word v. State*, 206 S.W.3d 646, 651–52 (Tex. Crim. App. 2006) (holding that a silent record requires a decision that appellant "procedurally defaulted any claimed violation of Article 36.27 and any objection to the trial court's answers"). Accordingly we overrule his second issue.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

Do not publish.  TEX. R. APP. P. 47.2(b).